431 So.2d 35 (1983)
The LOUISIANA CONSUMER'S LEAGUE, INC.
v.
CITY OF BATON ROUGE, et al.
No. 82 CA 0533.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Writ Denied June 10, 1983.
*36 Stephen M. Irving, Baton Rouge, for plaintiff-appellee Louisiana Consumer's League, Inc.
Frank Gremillion, Baton Rouge, for defendant-appellant City of Baton Rouge, et al.
Before PONDER, SAVOIE and CRAIN, JJ.
PONDER, Judge.
Defendants appealed the judgment awarding plaintiff damages for breach of contract.
The issues are the validity of the contract and the amount of damages.
We affirm.
Plaintiff was a nonprofit corporation doing business as the Consumer Protection Center, which provided consumer services in the Baton Rouge area. The CPC began operations on a grant from Community Advancement, Inc. in 1972; from 1973, it received financial support from the City of Baton Rouge and the Parish of East Baton Rouge and, from 1975, it received federal grants through the Louisiana Department of Health and Human Resources.
The 1981 budget for the City-Parish government included funding for CPC's continued operation. Following approval of the budget by the City-Parish Council, the parish attorney's office prepared two contracts between the CPC and city-parish, the first being the basic operating contract effective January 1, 1981 to December 31, 1981. It was signed by plaintiff's president and Mayor-President Pat Screen on May 19, 1981. The second document was known as the Title XX contract with effective dates from July 1, 1981 through June 30, 1982. It provided federal funds to the CPC funneled through the State, with a percentage of the grant matched by local funds.
When the authorization of the Title XX grant was before the City-Parish Council on April 22, 1981, the Council deleted that item from its agenda and adopted in its place a resolution transferring all residual funds from the CPC budget on June 30, 1981, to the city-parish general funds. Plaintiff requested and received a hearing to review the adverse action taken, but was unsuccessful in getting the resolution rescinded.
The grant for Title XX funding was never applied for and the CPC never operated under that contract. From January 1, 1981 until June 30, 1981, the CPC operated with funds allocated under the 1981 operating contract and with funds from the previous year's Title XX contract. An attempt was made to continue operations immediately after June 30, 1981, but ceased shortly thereafter.
Plaintiff filed suit against the City of Baton Rouge and the Parish of East Baton Rouge seeking damages for breach of the two contracts. Defendants denied the validity of either document, asserting that the Mayor-President erroneously signed the two contracts without the requisite authorization from the City-Parish Council.
No city-parish resolutions specifically authorizing the Mayor-President to execute *37 the contracts were introduced into evidence. Mayor-President Screen testified that when he signed the contracts he assumed they were approved.
The trial court found that Mayor-President Screen signed both contracts unaware that there were no Council resolutions authorizing him to do so and that no ratifying resolutions were passed by the Council authorizing his signature.
The court, however, determined that tacit approval was given by the Council when it adopted the 1981 budget. The court found the Council did not immediately repudiate the execution of the contracts, and permitted the CPC to continue business under the operating contract for two months following adoption of the April 22 resolution. This constituted a ratification of the operating contract.
The court found the defendants breached the contract and awarded damages in the amount of $66,029.00, that portion of the city-parish funds allocated to the CPC in the 1981 budget not expended. Defendants appealed.
Defendants contend that the trial court erred in finding a ratification of the contract since no resolution was passed authorizing its execution. We do not agree.
An unauthorized contract of an agent may be ratified by the subsequent action or inaction of the principal upon being apprised of the facts. Hanover Insurance Co. v. Caruso-Simoneaux Agency, Inc., 249 So.2d 322 (La.App. 1st Cir.), writ not considered, 259 La. 687, 251 So.2d 382 (1971); Chandler & Chandler v. City of Shreveport, 162 So. 437 (La.App. 2nd Cir. 1935).
The 1981 budget had been approved by the City-Parish Council when the operating contract was executed. The Council was aware that the CPC was receiving funding under the contract and that the City-Parish was receiving the services of the CPC. The contract was not repudiated and the April 22 resolution specifically authorized the CPC to continue operating for two additional months. Even if there was no authorization by resolution for the execution of the operating contract, we believe it was clearly ratified by the City-Parish Council. Defendants' unilateral termination of the contract prior to its expiration constituted an active breach of the obligation.
Defendants argue the trial court erred because plaintiff, a nonprofit corporation, failed to prove any loss or damage.
The general rule in a breach of contract action is that plaintiff is entitled to recover as damages the amount of loss he has sustained and the profits he has been denied. Damages may be awarded when damages cannot be calculated; in such cases the court has much discretion in the assessment of damages. La.C.C. art. 1934(3);[1]A.E. Landvoight, Inc. v. Louisiana State Employees' Retirement System, 337 So.2d 881 (La.App. 1st Cir.) writs refused, 339 So.2d 852, 853 (La.1976).
Plaintiff showed no actual pecuniary loss by defendants' termination of the contract. It was paid for the services it provided through June 30, 1981. Plaintiff, however, was prevented from providing *38 consumer services for the duration of the contract term and lost the right to continue serving the public, the real loser. We believe the award of $66,029.00 was within the discretion of the trial judge.
The judgment of the trial court is affirmed. Costs of the appeal are to be borne by the defendant.
AFFIRMED.
NOTES
[1] La.C.C. art. 1934(3):

* * * * * *
Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor.