(Nos. 34483, 34577, Cons.—

STONER MFG. CORP., Appellant, *vs.* YOUNG MEN'S CHRISTIAN ASSOCIATION OF AURORA *et al.*, Appellees.—THE CITY OF AURORA *ex rel.* Paul Egan *et al. vs.* YOUNG MEN'S CHRISTIAN ASSOCIATION OF AURORA *et al.*, Appellees.

*Opinion filed January 24, 1958—Rehearing denied March 19, 1958.*

SEARS AND STREIT, of Aurora, (BARNABAS F. SEARS, EDWARD F. STREIT, RICHARD L. JOHNSTON, and JOHN E. DREYER, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, REID, OCHSENSCHLAGER & MURPHY, and CHARLES A. DARLING, Corporation Counsel, both of Aurora, (WILLIAM C. WINES, LAMBERT M. OCHSENSCHLAGER, and ROBERT B. HUPP, of counsel,) for appellees.

Per CURIAM: The two appeals consolidated for this opinion come to us from the circuit court of Kane County and are sequels to *City of Aurora ex rel. Egan* v. *The Young Men's Christian Association of Aurora,* 9 Ill.2d 286, which was an action to set aside a deed whereby the city conveyed certain real property to the association. The land in question had been deeded to the city nine years previously "to hold and use and to permit the use for public purposes, either by the grantee or by the State of Illinois as the grantee may determine," and was conveyed by the city to the Y.M.C.A. for a high bid of $25,000, under authority thought to exist in the Revised Cities and Villages Act. We held that section 59—1 of the act, (Ill. Rev. Stat. 1953, chap. 24, par. 59—1,) did not permit the sale of municipal property held on express trust and reversed the decree which had upheld the sale on that theory. However, on the basis of evidence showing the impracticability and impossibility of exactly fulfilling the donor's intent and in view of the further fact that a counterclaim of the vendee prayed for general relief, we found that the trial court, under the traditional and broad powers accruing to equity over charitable trusts, would have been justified in decreeing a sale of the property and in imposing the same trust on the proceeds thereof under the doctrine of *cy pres.* Accordingly, we remanded the cause for proceedings consistent with our view and directed that if the court, in the exercise of its powers over trusts, should approve the sale previously made to the Y.M.C.A. then it should determine how the proceeds of such sale should be applied for city purposes under the *cy pres* doctrine of trusts.

Upon remandment the cause was redocketed and the Y.M.C.A. filed an amended counterclaim, in which the city joined, specifically praying (1) approval of the prior sale; (2) determination as to the disposition and use of the proceeds; and (3) the execution of a proper deed by the mayor and city clerk. Because a charitable trust was involved the Attorney General of Illinois was made a party and he subsequently filed an answer asking the court to approve the sale to the Y.M.C.A. and to impress the proceeds with the trust. At this juncture Stoner Mfg. Corp., an Illinois corporation owning land across the street from the trust property, sought leave to intervene and also moved that the cause be consolidated with an action it had filed against the city and Y.M.C.A. approximately a year earlier, and before our opinion, seeking to set aside the sale and deed to the Y.M.C.A. Before such motion was acted upon, the manufacturing corporation instituted a completely new action, adding the other owners of abutting lands and the Attorney General as parties defendant, in which it attacked the power and discretion of equity to order a sale of the premises and sought an injunction, prayed for damages to the city and abutting owners resulting from alleged illegal building activities of the Y.M.C.A. on the premises, and, in the alternative, asked the court to order the premises restored to their original condition and to decree a new sale for which the corporation tendered a minimum advance bid of $100,000.

On February 6, 1957, the chancellor denied the corporation leave to intervene in the remanded cause and the following day, on motion of the Attorney General, dismissed the company's new action for want of equity. Thereafter the court conducted a hearing and culminated the original proceeding by approving the sale to the Y.M.C.A. and ordering the execution of a deed, but reserved the question relating to the disposition of the proceeds. The Stoner Mfg. Corp., hereinafter referred to as appellant, has ap-

pealed both from the order denying it leave to intervene in the original cause and from the decree dismissing the complaint in the separate proceeding.

The common and decisive question in both appeals is whether appellant has an interest in the trust property different from that of the public generally, and it is conceded that if such special interest does not exist, then appellant has no standing to sue and the litigation is properly within the charge of the Attorney General. See: *Stowell* v. *Prentiss,* 323 Ill. 309; *Barker* v. *Hauberg,* 325 Ill. 538; *Newberry* v. *Blatchford,* 106 Ill. 584; *Art Institute of Chicago* v. *Castle,* 9 Ill. App.2d 473; *Kolin* v. *Leitch,* 343 Ill. App. 622; *People ex rel. Courtney* v. *Wilson,* 327 Ill. App. 231; Bogert, Trusts and Trustees, vol. 2A, sec. 414.

Pertinent facts gathered from the records filed in this court disclose that the trust property was vacant and unimproved when deeded to the city. Although an unsuccessful attempt had been made to convey the land to the State of Illinois Armory Board, the city had not, prior to the conveyance to the Y.M.C.A., either made or formally authorized any specific public use of the trust property. It had, however, tolerated one corner of it to be improved and used as a parking lot by industries in the area. Appellant is the owner of one such industry, its offices, factory and some parking facilities of its own being located across from the parking lot on the trust property, and it is alleged that appellant's employees, customers and tradespeople use the trust property for parking purposes. Based upon these facts, and upon the circumstances that the donor's deed dedicated the trust property to "use for public purposes," appellant asserts that it has a special interest distinct from the public, first, because it is the owner of realty abutting on dedicated land and, second, because it will suffer special injury by reason of the diversion of said land to private use. Either of these grounds, it is urged, afford a sufficient basis for appellant to defend or sue in its own name.

To sustain its claim that owners of abutting realty possess a special interest in dedicated land, appellant relies upon a line of cases which have permitted the owners of property abutting on dedicated land to maintain an action to restrain the use of the land for a purpose other than that contemplated by the dedication, even though they show no damage to their property resulting from such misuse. Chief among these decisions are *Nichols* v. *City of Rock Island,* 3 Ill.2d 531, wherein owners whose property adjoined a public park were held to have the right to enjoin an illegal use of the park property; *City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540, in which owners of land abutting on a public square were held to have the right to enjoin the construction of a railroad across it; *Village of Riverside* v. *MacLain,* 210 Ill. 308, holding that abutting owners to land dedicated as a public park possess a right to have the tract preserved as a park; and the so-called "Grant Park cases," typified by *City of Chicago* v. *Ward,* 169 Ill. 392, recognizing the right of abutting owners to enforce a dedication which provided: "Public ground forever to remain vacant of buildings." The rationale of all these cases is that dedication for a special and restricted purpose, the effect of which is to benefit adjoining property, creates a special trust or interest in favor of adjoining owners which invests in them the right to invoke the preservation of the property for the use to which it was dedicated. See also: *United States* v. *Illinois Central Railroad Co.* 154 U.S. 225, 38 L. ed. 971; 39 Am. Jur., Parks, Squares and Playgrounds, sec. 48.

It is our opinion, however, that the decisions relied upon do not control when applied to the facts of this case. The land here involved had never been formally utilized by the city for a public use or purpose as the donor intended, and the proceeding is one to determine the feasibility and possibility of effectuating the donor's intent with a purpose of preserving the trust through the ap-

plication of the doctrine of *cy pres*. We have found no authority, nor have we been referred to any, establishing that abutting owners are necessary parties in a *cy pres* proceeding and observe that the doctrine was applied in *Catholic Bishop of Chicago* v. *Murr*, 3 Ill.2d 107; *Village of Hinsdale* v. *Chicago City Missionary Society*, 375 Ill. 220, and *Board of Education* v. *City of Rockford*, 372 Ill. 442, without such owners being joined. On this point it is commented in Bogert, Trusts and Trustees, vol. 2A, sec. 440, pp. 388-389, as follows: "The necessary parties in a suit to request the court to apply *cy pres* would seem to be three, namely, the Attorney General or other official representative of the public interest, the trustees, and the settlor or his successors. The Attorney General should have an opportunity to represent the general public with regard to the existence of a general charitable intent warranting the use of *cy pres,* and with relation to the questions whether there has been a failure of the charity as originally planned and what substituted scheme would be the best. The trustees must be parties so that any decree directing them to apply the property to new purposes may bind them. They should have a chance to be heard on the existence of an emergency which requires *cy pres* and on the issue as to what is the best substituted plan. * * * It would appear to be undesirable to add possible future beneficiaries of the charity as defendants, since they are represented by the Attorney General, and their presence merely complicates the litigation."

Relying upon decisions holding that one specially injured by the breach of a public trust may sue to enjoin such breach, (*Nichols* v. *City of Rock Island,* 3 Ill.2d 531; *Carstens* v. *City of Wood River,* 332 Ill. 400 and 344 Ill. 319,) appellant maintains it has a right to intervene or sue in this case because it will suffer special damage if the dedicated land is diverted to private use. Assuming, but not deciding, that such authorities apply to a proceeding

for the application of *cy pres,* we are of the opinion the facts pleaded are insufficient to justify relief on such ground. To show special injury appellant alleged in both causes that a portion of the dedicated land had been devoted to off-street parking, that it was used by neighborhood residents, customers, employees and persons doing business with industries in the area, as well as citizens who were in the neighborhood, and that employees, customers and salesmen calling on appellant likewise use the premises for parking vehicles. If any member of the public is free to use the parking facility as alleged, it is manifest that a discontinuance of such use, which was never formally authorized by the city or determined with reference to the intention of the dedicator, would inflict no greater injury on appellant than upon any other member of the public. Appellant argues under such pleading that the diversion of the land from parking purposes will curtail access to its business. In real-property law, with which we are concerned here, "access" denotes the right vested in the owner of the land which adjoins a road or other highway to go and return from his own land to the highway without obstruction. (Black's Law Dictionary, Third Ed. p. 21.) Clearly, neither the facts relied upon, nor any other facts pleaded, set forth special injury in this respect. As said in *Barco Manufacturing Co.* v. *Wright,* 10 Ill.2d 157, at 162: "* * * if the court can see that the allegations of special injury are unjustified and cannot be true, then, it need not consider such allegations as true." We conclude that the allegations relied upon show no damage peculiar to appellant different from that to any other members of the public.

For the reasons stated we hold that appellant's interests were fully represented by the Attorney General, that the circuit court of Kane County properly denied appellant leave to intervene in the *cy pres* proceeding, and that it was correct in dismissing the complaint in the separate

cause. Accordingly, the order and decree appealed from are affirmed.

*Order and decree affirmed.*